said preliminary injunction shall remain in full force and effect.'

"In all other respects the judgment to remain in full force and effect as originally rendered.".

For the reasons assigned, the original judgment and the amended judgment of the district court are affirmed.

**82 So.2d 849**

**James W. MUNDY**

**v.**

**GENTILLY OAKS, Inc., Sewerage & Water Board of New Orleans, City of New Orleans, Southern Engineering & Construction Co., Inc., George E. Bradford, United States Fidelity & Guaranty Company, Houston Fire & Casualty Insurance Company of Houston, Texas.**

**No. 42387.**

June 30, 1955.

Rehearing Denied Oct. 4, 1955.

Bernhardt C. Heebe, Porteous & Johnson, Herbert Beal, Robert G. Hughes, New Orleans, for relators.

James J. Morrison, Rudolph R. Schoemann, New Orleans, of counsel, for plaintiff and respondent.

SIMON, Justice.

Writs with a stay order were granted to review the ruling of the district judge overruling exceptions of misjoinder of parties defendant and of improper cumulation of actions filed by relators to plaintiff's suit against them as defendants.

This case was before us on two separate but consolidated appeals prosecuted by the plaintiff from judgments sustaining exceptions of no cause of action and dismissing the suit as to some of the cited defendants.[1] In that instance we affirmed the judgment of the lower court dismissing plaintiff's suit against the defendants City of New Orleans, Sewerage & Water Board of New Orleans (hereinafter referred to as S & W B), and the Houston Fire & Casualty Insurance Company of Houston, Texas (hereinafter referred to as Houston Fire), and we reversed said judgment insofar as it dismissed the suit against defendant Bradford wherein his exception of no cause of action was sustained. Consequently, the remaining parties defendant against whom damages for various claims are made are: (1) Gentilly Oaks, Inc., hereinafter re-

1. 227 La. 118, 78 So.2d 530.

ferred to as Gentilly Oaks; (2) Southern Engineering & Construction Co., hereinafter referred to as Southern; (3) George E. Bradford, hereinafter referred to as Bradford; (4) United States Fidelity & Guaranty Company, hereinafter referred to as U. S. F. & G.

In our former opinion, supra, following a complete statement of the facts, the following observation was made:

"If exceptions of misjoinder of parties and improper cumulation of actions were presented for our consideration we might be inclined to sustain them, for the suit involves several separate and unrelated demands and there is a lack of community interest among all of the cited defendants. But exceptions of that nature were not passed upon by the trial judge; hence, our review is limited to the matters to which the mentioned two appeals pertain." Mundy v. Gentilly Oaks, Inc., 227 La. 118, 78 So. 2d 530, 532.

Subsequently, the remaining defendants, relators herein, filed and re-urged the exceptions of misjoinder of parties defendants and improper cumulation of actions. These exceptions were overruled and we granted writs of certiorari, prohibition and mandamus to review the correctness of the trial court's ruling.

Relators complain that the plaintiff has cumulated numerous unrelated claims against them in one suit. The cumulated causes of action complained of rise out of various transactions entered into by parties herein, plaintiff as well as the parties originally named as party defendants, for the development of a real estate subdivision, including the construction of some 283 houses, on land situated in New Orleans and owned by Gentilly Oaks.

To the end of developing the Gentilly Oaks Subdivision, on July 25, 1951, Gentilly Oaks contracted with S & W. B to obtain the necessary sewerage collection system and water distribution system for the subdivision. The Houston Fire became surety in said contract to the extent of $11,320.

On February 4, 1952, Southern entered into contract with S & W B wherein Southern agreed to perform the work in connection with the installation of the sewerage and water distribution systems in the subdivision. The U. S. F. & G. intervened as surety in this contract, as well as the one executed between S & W B and Gentilly Oaks on July 25, 1951, to the extent of $163,700.

Gentilly Oaks, having previously contracted with the City of New Orleans for the construction of the roadways and grading system, thereafter on February 29, 1952, contracted with Southern to do and perform said work.

On May 7, 1952, the City of New Orleans by written agreement between it, Gentilly Oaks and Southern assumedly took official cognizance of the contract previously entered into between Gentilly Oaks and Southern in connection with said

roadways and grading system, and in Connection therewith U. S. F. & G. executed the bond in the sum of $50,000 as surety with Gentilly Oaks and Southern as principals, in favor of the City of New Orleans to protect it from any damage resulting from a default in the construction of said works.

In performance of the contracts it had undertaken for Gentilly Oaks, Southern subcontracted on May 1, 1952, with the plaintiff, James W. Mundy, by execution of two separate written contracts, one relating to the installation of water mains and sanitary sewers, the other to the construction of storm sewers.

Plaintiff alleges that he vigorously prosecuted the work undertaken by him by virtue of said written subcontracts until July 3, 1952, when Southern prohibited him from further performance thereof; that from May 1, 1952 to July 3, 1952, he completed certain works, as is shown by Engineers' Certificates of Completed Work and extensions thereof, issued by F. G. Stewart, Civil Engineer, for which he alleges he was entitled to be paid the sum of $122,922.15. He further alleged that he was entitled to be paid the sum of $9,054.85 for "extras" allegedly performed under said subcontracts.

Plaintiff asserts that despite Southern's wrongful act of barring him from further performance of his obligation, he was retained in Southern's employ until August 2, 1952. That Southern also continued to use plaintiff's machinery and equipment until August 18, 1952, but that he has received no remuneration for his services nor for the use of his machinery and equipment.

Plaintiff further alleges that on October 22, 1952, Southern abandoned its contract, assigning same to Bradford; that thereafter Bradford entered into three written subcontracts with plaintiff, dated, respectively, at Birmingham, Alabama, on November 3 and 26, 1952, and at New Orleans, Louisana, on November 18, 1952, under which plaintiff continued his contractual operations until Bradford wrongfully excluded him from further performance of the remaining works, and that he has not been paid for work performed.

Plaintiff alleges that both Bradford and Southern maliciously conspired to breach their subcontracts with him; that they libeled and slandered him to the detriment of his financial and professional reputation.

Plaintiff recorded private and public work liens totalling $125,745.48 against the relators to secure the sum allegedly due him under his several subcontracts.

Hence, the causes of action arising out of the various transactions relating to the development of Gentilly Oaks Subdivision, as urged by plaintiff in his original, first and second supplemental petitions are as follows:

1— Against Southern for breaches of the two separate written subcontracts, executed on May 1, 1952, and for breaches of alleged oral contracts for extra work performed

and for supplies and machinery furnished in connection therewith before and after July 2, 1952.

2— Against George E. Bradford, assignee of Southern's contracts, for breaches of the three written subcontracts· between plaintiff and Bradford above referred to.

3— Against Bradford and Southern for ·$100,000 additional damages resulting from alleged conspiracy and malicious breach of said contracts.

4— Against Bradford for $100,000 additional damages, resulting from alleged slander and libel.

5— For recognition of public works liens and privileges, recorded in the Mortgage Office of the Parish of Orleans, against all relators and all buildings, improvements and appurtenances constituting the Gentilly Oaks Subdivision, totalling the sum of $125,745.48.

6— Against the U. S. F. & G. for liability to the extent of its surety bonds executed in connection with these construction contracts.

7— Against Gentilly Oaks, Bradford and Southern for $1,736 for work performed over and beyond those obligations enumerated in the above written and oral contracts.

Summarily, the judgments sought against relators are as follows:

First, against all defendants, namely: Gentilly Oaks, Southern, Bradford, and U. S. F. & G. for $125,745.48.

Second, against Southern, Bradford and Gentilly Oaks for an additional sum of $1,736.

Third, against Southern and Bradford, jointly and in solido, for an additional sum of $100,000 damages resulting from alleged malicious breach of contracts.

Fourth, against Bradford for an additional sum of $100,000 damages resulting from alleged libel and slander.

Fifth, against all defendants for recognition of the recorded liens amounting to $125,745.48.

■ Gentilly Oaks, Southern, Bradford and U. S. F. & G. can not be legally held liable to plaintiff, jointly, severally and in solido, for $125,745.48: The contracts which give rise to this litigation are those executed between plaintiff and Southern and between plaintiff and Bradford. Whether the written contracts entered into between plaintiff and Southern are binding on Bradford by virtue of their assignment to him is a question of fact to be ascertained from the terms of the said contract of assignment. The alleged oral contracts entered into between plaintiff and Southern are not binding on Bradford, said ·contracts not being assigned and Bradford· not being a party thereto. The written or oral contracts entered into between plaintiff and Bradford are not binding on ·Southern, it not being a party thereto.

■ Palpably, plaintiff's claims under alleged oral contracts for "extra" work per-

formed by him and for the rental of machinery and equipment can be directed only against the party or parties with whom said contracts were made and not jointly against relators, the nonparticipants to said contracts not being called upon to resist or defend claims in which they have no common interest or liability in the subject matter of the contracts. There can be no joinder or cumulation of actions where there is no joint liability between the defendants or some of them.[2]

As previously observed, part of the money demanded by plaintiff is the sum of $125,745.48. It appears that after the alleged breach of contract by Southern, plaintiff filed a mortgage lien against Gentilly Oaks Subdivision in the sum of $94,632.-50, based upon the alleged indebtedness due him by Southern. After the alleged breach of contract by Bradford, plaintiff again filed a mortgage lien against Gentilly Oaks Subdivision in the sum of $31,032.23, based upon the alleged indebtedness due him by Bradford.

Obviously, Southern and Bradford have no community of interest in the total amount demanded by plaintiff, nor are they individually concerned with the respective liability of the other as a result of their alleged breaches of contracts. For instance, Southern could not in any event be held liable for the alleged breach of contracts entered into between plaintiff and Bradford; nor could Bradford be held liable for alleged breach of oral contracts entered into between plaintiff and Southern which were not covered by the assignment by Southern in favor of Bradford. It is also manifest that the portion of plaintiff's claim involving loss of profit under the contracts cannot be asserted against U. S. F. & G., the surety liability under its policy being limited to costs for labor and material. Clearly, under its policy, U. S. F. & G. has no interest in resisting plaintiff's claim for sums allegedly due him under oral contracts with either Southern or Bradford for "extras" performed by plaintiff in connection with his performance of obligations assumed under the written contracts. Its liability, if any, can grow only out of a violation of any of the obligations imposed by the terms of the written contracts.

Relative plaintiff's claim for $1,736 against Gentilly Oaks, Southern and Bradford for "extras" performed under alleged oral contracts, it appears that this claim, originally asserted against Gentilly Oaks alone in a separate suit, was disallowed by the Civil District Court, Parish of Orleans, on the ground that the defendant therein named (Gentilly Oaks) could not be held responsible therefor. Plaintiff did not appeal from this ruling. He now has cumulated this demand in the instant suit against the three above-named relators.

2. 67 C.J.S., Parties, § 40, p. 962; McGee v. Collins, 156 La. 291, 100 So. 430, 34 A.L.R. 336.

Manifestly, the two personal actions herein ($100,000 damages for alleged malicious breach of contract from Bradford and Southern, and $100,000 damages for libel and slander against Bradford alone) are separate and distinct causes of action against these named defendants. Gentilly Oaks and U. S. F. & G. have no interest whatsoever in these personal demands, nor can they be called upon to join issue in regard thereto. Equally true is the conclusion that Southern is not concerned with the libel and slander cause of action brought directly against Bradford. These two causes of action must necessarily be held to be independent relations and can only be predicated upon liability arising from actions ex delicto and not ex contractu.

The Louisiana rule on joinder of parties defendant is stated in 67 C.J.S., Parties, § 40, p. 961, as follows:

"The code of Louisiana is generally founded on the civil law; but the code of practice makes no provision for determining when parties may or may not be joined as defendants, and it has been said that the practice as to such matters generally must be determined by the rules of the common law, according to which a large discretion is left to the court. The test as to whether several persons may be joined as parties defendant is whether they have a common interest or liability in respect of the subject matter of the suit; and where they have such a common interest in the principal matter in controversy they may be joined as defendants, notwithstanding there is some distinction in plaintiff's claim against each defendant * * *. However, a person may not be joined as defendant in an action on a demand in which he has no interest; and several persons may not be joined as defendants where they have no community of interest in the subject matter of the litigation, as where the causes of action against each defendant are distinct and separate and arose from different and independent relations or transactions or where the object of the suit is different as to the different defendants; nor can two parties be joined as defendants, where one or the other is liable, but not both. * * *"

In the case of Gill v. City of Lake Charles, 119 La. 17, 43 So. 897, we said:

"Our Code of Practice makes no provision for determining when parties may nor may not be joined either as plaintiffs or defendants. We have to be guided in that regard by the well-settled rules of pleading as found in the books of common law, according to which a large discretion is left to the court; the aim being to avoid a multiplicity of suits, while not permitting parties to be joined who have not a common interest, or where the defendants would be embarrassed in their defense, or delays would be caused, or complications arise, in connection with costs, or otherwise."

See, also, R.C.L., Vol. 1, p. 363.

In the case of Lykes Bros. Ripley S.S. Co., Inc., v. Wiegand Marionneaux Lum-

ber Co., Inc., 185 La. 1085, 171 So. 453, we exhaustively reviewed our jurisprudence in ascertaining and determining the subject matter of joinder of parties defendants and cumulation of actions. Therein we reaffirmed our holding that in order to allow the joinder of several defendants and the cumulation of causes of actions in one suit, it must affirmatively appear that the causes of action against the defendants are of cognate origin in which the defendants have a common interest in the matter to be adjudged and the issues of which can be decided in one judgment, thereby avoiding a multiplicity of suits, a procedure which our courts tend to liberalize.

It is equally inescapable, however, that where defendants are joined in one demand in which they have no common interest or wherein it appears there exists no joint liability between them an exception of improper parties and improper cumulation of actions is valid and should be sustained.

As previously observed, the several conflicting causes of action, the lack of mutuality of interest in opposing the demands of plaintiff, the improper cumulation of actions wherein there exists no joint and solidary liability as are sought to be joined in this instance, compel us to sustain the exceptions filed herein and order a nonsuit of plaintiff's demands.

For the reasons assigned, the judgment of the lower court is reversed, annulled and set aside, and it is ordered, adjudged and

decreed that the exceptions herein filed be sustained and plaintiff's demand be dismissed as in nonsuit. All costs to be paid by plaintiff.