## MYERS v. BURKE.

### No. 1995.

Court of Appeal of Louisiana. First Circuit.

June 6, 1939.

Chas. C. Jaubert, of Lake Charles, for appellant.

Robt. R. Stone, of Lake Charles, for appellee.

OTT, Judge.

The petition alleges that the plaintiff and the defendant entered into an agreement by which, for the sum of one dollar per year, the defendant agreed to permit plaintiff to build a house on and occupy a certain tract of land on the Calcasieu River, in which agreement it was understood that all improvements placed on the land by the plaintiff would belong to him; that should the land be sold, or the defendant desire possession thereof, plaintiff would remove his improvements from the land within a reasonable time; that plaintiff built a five room house on said land, and despite the agreement that the improvements were to belong to plaintiff, the defendant sold the land and improvements to a third person, and the defendant is no longer able to return the improvements to plaintiff. The latter is asking for $500 as the value of these improvements.

Defendant filed an exception of vagueness which was overruled by the court. Defendant then filed an answer in which he denied owing plaintiff anything for the improvements, but admitted that he permitted plaintiff to occupy the land; that he (defendant) was a one half owner of the land, and that he gave plaintiff per-

mission to occupy the property temporarily, and that any improvements placed on the property by the plaintiff during his occupancy were forfeited by plaintiff and lost by him in the event the property was sold, and plaintiff would vacate in that event at once. In the alternative, and in case the plaintiff is entitled to said improvements, he has lost his right to claim the same as he was ejected from the property by a judgment of the City Court of Lake Charles and made no claim to said improvements in that suit.

Another suit was filed against the same defendant by Louis Benoit wherein the latter makes practically the same allegations with reference to an agreement that he had with the defendant as that set out by the plaintiff in this suit. Benoit also asks for $500 for the value of a house which he built on the same tract of land under the same kind of an agreement as that had with Myers. The answer of the defendant in the Benoit suit is the same as that in this suit.

The cases were consolidated for the purpose of trial and we find the evidence taken in both cases embodied in the record of this case. Separate judgments rejecting the demands of the plaintiffs were rendered and they have taken separate appeals. What is said in this case will apply for the most part in the case of Benoit against the same defendant.

Myers and Benoit testified to practically the same effect as to the agreement with the defendant about occupying the land and building the houses thereon. Their testimony was in line with their petitions relative to the agreement. They obtained permission to occupy the land on the river in the early part of 1937, and built the two houses thereon, which they occupied without paying rent until July and August, 1938, when they were notified by the purchaser of the property that each would have to pay one dollar per week rent, or vacate the property. On their failure to pay this rent, they were ejected by a proceeding taken by the purchaser in the City Court. Both of these plaintiffs testified that at no time was anything said about the improvements belonging to the defendant if he sold the property, but on the contrary, they both state very positively that they were to be given an opportunity to remove their improvements in case the land was sold, or the defendant desired possession of the land.

Two other witnesses testified that they had similar agreements with reference to occupying parts of this same property as that testified to by the plaintiffs. The defendant testified that Benoit came to see him—or called him up—and asked permission to build a little shanty on this land; that he told Benoit he could do so, but he would have to pay him one dollar a year rent; that if Benoit made any improvements on the land, and he (defendant) sold it, the improvements would go with the land, and Benoit would lose them. The defendant testified that he let anybody who wanted to do so build a house on his land on the river, with the understanding that any time he saw fit they would have to move and leave any improvements they had put on the land; that he let several live on the land on those conditions.

The defendant says that he did not make the arrangement with Myers, but that Myers made his agreement with Miss Kelly, defendant's book-keeper. Miss Kelly testified that Myers came in the office with Benoit and wanted permission to build on the property as he did not have any place to put his family; that she told him that he could build on the land, but at any time the property, was sold, he would have to leave.

█ It is obvious that these plaintiffs were not occupying this property as lessees under a lease. The essentials of a lease are the thing, the price and the consent. Civil Code, Article 2670. The price should be certain and determinate, and unless there is a price fixed in money, or some commodity or fruits of the land, so that the price can be determined, there is no lease. Civil Code, Article 2671; University Pub. Co. v. Piffet, et al., 34 La.Ann. 602. The consideration of one dollar per year that is mentioned was not a serious consideration as rent. If defendant had so considered it, he would have been bound for one year on the payment of the one dollar by plaintiffs, and they could not have been evicted by defendant before the end of year. The whole tenor of defendant's answer and his testimony goes to show that he considered the plaintiffs nothing more than licensees occupying the land at his will.

█ This being the situation it becomes important to ascertain what the agreement was with reference to the improvements put on the land by these plaintiffs as li-

censees. Both plaintiffs deny that the improvements were to be forfeited to defendant at any time he might sell the land. They are corroborated in their position by two others who had a similar agreement with the defendant, and even the testimony of Miss Kelly strengthens their position as she says nothing of the improvements being forfeited in case the property was sold only that plaintiffs would have to leave. Moreover, the land was not being used, and it appears that defendant gave permission to these parties to occupy the land as an act of charity—or at least as a favor to them—and it is hardly reasonable to suppose that the parties should have understood that the defendant would be given the right to confiscate the improvements placed on the property, which he could do by selling the property at any time—even the next day, if he saw fit.

As the relations of the parties are not to be considered from the standpoint of lessor and lessee, the articles of the Code relating to lease have no application to the case. The right of the plaintiffs to recover the value of their houses arises under Article 508 of the Civil Code which gives a third person who places improvements on the land of another the right to recover for the value of the material and workmanship when these improvements are kept by the owner of the land. Kibbe v. Campbell, 34 La.Ann. 1163; Womack v. Womack et al., 2 La.Ann. 339.

■ The only remaining question is the value of the houses put on defendant's land by these two plaintiffs. Both houses were made from cheap gum and pine lumber and were covered with asphalt roll roofing. The cost of the houses as given by plaintiffs is $200 each. A carpenter, who made a rather casual examination of the houses, testified that it would cost at least $200 each to build the houses.

However, a lumberman and contractor called by defendant, testified that the Benoit house, in his opinion, would be worth from forty to fifty dollars to any one who wanted to use it, and he placed a value of $75 on the house of Myers. He stated that the house of Myers is a little better house than that of Benoit. Taking all the testimony together, we think one hundred dollars for the Benoit house and one hundred and twenty five dollars for the Myers house would properly compensate them for their improvements.

For the reasons assigned, it is ordered in this case that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff herein, Leon Myers, have and recover judgment of and from the defendant, John T. Burke, in the full sum of $125, with legal interest thereon from judicial demand, and for all cost of the suit in both courts.