74 So.2d 387

**MILLER et al.**

v.

**GREATER BATON ROUGE PORT COMMISSION.**

No. 41813.

May 31, 1954.

join the Greater Baton Rouge Port Commission from issuing and selling $55,000 of term notes or bonds pursuant to a resolution adopted by the Commission on December 28, 1953 and to permanently enjoin the Port Commission from issuing or proposing to issue any notes or bonds under the provisions of Act 9 of the Regular Session of the 1952 Legislature, which was adopted as an amendment to the Constitution of Louisiana as Section 29, Article 6 at the general election held on November 4, 1952. On trial of the merits, the lower court rejected the plaintiffs' demand and denied the injunction. The plaintiffs have appealed.

The appellants contend that Act 9 of 1952 was not adopted by the Legislature in the manner provided by Section 1 of Article 21 of the Constitution of Louisiana in that the joint resolution, as finally adopted, was never set forth in full on the Journals of the House and Senate. The appellants' contention is based on the ground that the bill as amended was never set forth in full on either the Journal of the House or the Journal of the Senate in the form in which it was finally passed, enrolled and signed, even though the bill and the amendments thereto had been separately entered in full in the Journals.

Cashio, Cashio & Malloy, Maringouin, for plaintiffs-appellants.

Hynes & Mathews, Benton & Moseley, Durrett & Hardin, R. Gordon Kean, Jr., Baton Rouge, Chapman & Cutler, Chicago, Ill., Wood, King & Dawson, New York City, for defendant-appellee.

PONDER, Justice.

In this suit the plaintiffs, taxpayers of the Parishes of East Baton Rouge, West Baton Rouge and Iberville, sought to en-

All that Section 1 of Article 21 of the Constitution requires is that a reference sufficiently identifying the amendment proposed to be acted upon be entered on the Journals. In State ex rel. Porterie v.

Board of Liquidation of State Debt, 190 La. 520, 556; 182 So. 661, 673, this court said:

"'It seems to me that the bill was sufficiently read on three separate days in each house and the yeas and nays entered on the journals on final passage as required by the Constitution. There is no requirement that a proposition to amend the Constitution shall be entered in full on the journals, nor does there seem to be any particular provision relating to the form of entry that should be made. It would therefore seem to me in the absence of any particular requirement otherwise that the entries in the journals of both the House and Senate are of such character as easily to identify the matter brought up each time with that ultimately brought up and adopted as a whole'."

The appellants contend that this constitutional amendment, Section 29 of Article 6, is not self-executing and that ancillary legislation is necessary to make the amendment effective for the reason that no provision is made for the levy of any taxes or other source of revenue by the Parishes and the State to meet the obligations to be incurred and for the further reason that no provision is made for allocating the burden imposed as between the Parishes themselves and the Parishes and the State.

■ The appellants do not cite any authority to support their contention. All provisions necessary for the creation of the Port Commission, its functions and the

powers granted to effectuate these functions are clearly defined. It is comprehensive from every standpoint and obviously a self-executing constitutional amendment and no further legislation is necessary. When no further legislation is necessary to put a constitutional provision into effect, it is self-executing. Coguenham v. Avoca Drainage District, 130 La. 323, 57 So. 989.

■ The Port Commission is an Executive Department of the State and the term notes or bonds issued by it are the primary obligations of the State and the payment of same is not limited to a special fund. State ex rel. Kemp v. Board of Liquidation of State Debt, 214 La. 890, 39 So.2d 333; Hartwig Moss Ins. Agency, Ltd. v. Board of Commissioners of Port of Orleans, 206 La. 395, 19 So.2d 178; Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901.

The State being the prime obligor, the Parishes could only be liable in the event of the failure of the State to meet the obligation which is a remote probability. The grant of authority to the Port Commission to issue the bonds and notes contemplates and conclusively implies that the power exists to discharge the obligation so incurred by the State by taxation or otherwise since no contrary intention is manifested. U. S. v. New Orleans, 98 U.S. 381, 25 L. Ed. 225; 44 C.J., Par. 4312, page 1286; 64 C.J.S., Municipal Corporations, § 1997, p. 682.

The appellants contend that the authorizing laws, even if validly approved as a constitutional amendment, violate Section 12 of Article 4 of the Constitution in that they provide in direct terms, as well as in practical effect, for the loan of credit of the State to a corporation.

█ The Port Commission is not a corporation but an Executive Department of the State. Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901, supra.

The appellants contend that the mortgage plan provided for proposes to mortgage and encumber by action of the Commission only, all of the properties and assets acquired, the title to which, under the provisions of the authorizing laws, is invested in the State of Louisiana, and that any enforcement of the mortgage would require a suit against the State where there is no legislative method prescribed for such suit as is required by Article 3, § 35 of the Constitution.

█ Section 35 of Article 3 of the Constitution is a limitation on the powers of the Legislature in that when suit is authorized by the Legislature the method of procedure and the effect of the judgments rendered therein must be provided for. This provision of the Constitution applies only to the Legislature. By the adoption of the amendment, Section 29 of Article 6, the people gave their consent to the Port Commission to mortgage and encumber the property and

necessarily granted the right of the mortgage holder to its enforcement. In other words, an enforceable mortgage was contemplated.

The appellants contend that the authorizing laws violate Section 14 of Article 14 of the Constitution in that said laws would pledge the full faith and credit of the other political entities named in the authorizing laws other than the State of Louisiana, and would thus impose a solidary debt and obligation upon these entities ipso facto without notice or consent of any kind, and without compliance with the requirements of Section 14 of Article 14 of the Constitution.

█ Under the provisions of Section 29 of Article 6, the bonds are issued by the Port Commission, an Executive Department of the State, and Section 14 of Article 14, providing for the issuance of bonds by political subdivisions to be voted on by the property taxpayers is not applicable.

It is contended by appellants that the authorizing laws violate Section 16 of Article 3 of the Constitution in that the said laws include within their scope and purpose more than one subject-matter; first, the issuance of bonds by the Commission, purporting to act as a Department of the State of Louisiana; and second, the imposition of the obligation for the payment of said bonds upon other political entities named therein; further appellants contend that the authorizing laws would purport to amend two unrelated sections of the Constitution, to wit, Article 6, § 29, and Article 14, § 14.

The appellants have not pointed out wherein more than one object is dealt with in the act or presented any supporting authorities. The establishment of the Port and its administration is a single plan and only one object has been dealt with. As pointed out in Graham v. Jones, 198 La. 507, 3 So.2d 761, where an amendment may be logically viewed as parts of a single plan, it may be submitted as one amendment. Where an act of the Legislature or an amendment to the Constitution embodies a single plan and every provision therein is germane to that plan, it is not violative of the Constitution. Similar amendments have been approved in the cases of Hotard v. New Orleans, 213 La. 843, 35 So.2d 752; and Orleans Parish School Board v. New Orleans, La.App., 56 So.2d 280.

Appellants contend that the proposed leases with third parties will violate Section 12 of Article 4 of the Constitution in that such leases to private firms and individuals of facilities, constructed out of the proceeds derived from the sale of bonds and notes, is in practical effect a loan of the credit of the State of Louisiana to private individuals and corporations.

It must be assumed that the leases which will be made by the Port Commission will be for adequate consideration. It is well settled that such does not amount to a loan of the credit of the State. State v. Board of Commissioners of Port of New Orleans, 153 La. 664, 96 So. 510; City of

New Orleans v. Disabled Veterans, 223 La. 363, 65 So.2d 796.

Appellants contend that the proposed indenture in the resolution dated December 28, 1953 is contrary to and in violation of Act 9 of 1952 and Section 29 of Article 6 of the Constitution. It is argued that the full faith and credit provision applies only to bonds issued by the Commission and not to term notes.

The words "bonds" and "notes" have been used interchangeably in the business world and no distinction exists as a matter of law for the reason that the essence of each is to pay a certain sum to the bearer. Board of County Commissioners of the City and County of Denver v. Home Savings Bank, 236 U.S. 101, 35 S.Ct. 265, 59 L.Ed. 485.

It is argued that the obligations authorized are primarily the obligation of the State whereas the State's liability is intended to be subordinated to that of the Port Commission and the other political entities; further that all obligations authorized are to be issued in the name of the State whereas the bonds or notes are to be issued as obligations of and in the name of the Port Commission.

The contentions and arguments advanced in support of it are based on the assumption that the Port Commission is an entity separate from the State. This is not true. The Port Commission is an Executive De-

partment of the State, as was pointed out in Greater Baton Rouge Port Commission v. Watson, supra.

■ The appellants contend that under the proposed plans for construction certain facilities are to be built and paid for out of the proceeds derived from the sale of bonds and notes, which are thereafter to be leased to private firms and individuals and that these proposed plans violate the provisions of Article 6, § 29 of 1952, in that, under the express provision of these laws only such constructions are allowed as are necessary to the maintenance and operation of public port properties and facilities.

The issue presented was disposed of contrary to this contention in the case of Greater Baton Rouge Port Commission v. Watson, supra.

Appellants contend that the provisions of the authorizing laws investing in the Port Commission the exclusive right to control and regulate traffic in commerce in the port area and the power to own, take charge of and administer all public wharves, docks, sheds and landings, and to construct, acquire and equip whatever landings and other structures for the traffic of commerce as are necessary to the port area, represents the taking of said properties without just compensation in violation of the 14th Amendment of the United States Constitution, and Article I, § I of the Constitution of the State of Louisiana.

■ The appellants do not point out wherein there is an unjust taking of properties without adequate compensation. The right of the people by constitutional amendment to authorize the creation of port authorities with exclusive jurisdiction within the areas defined therein cannot be denied and it is not questioned herein. The amendment does not purport to prevent the legitimate use of private property within the area. The amendment does nothing more than to invest in the Port Commission the rights and powers which are inherent in the ownership and operation of Port facilities and gives it exclusive jurisdiction in order to insure an efficient administration of the Port's affairs arising under the law creating it.

For the reasons assigned, the judgment is affirmed at appellants' cost.